## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| FIRST BRANDS GROUP, LLC, | ) | Case No. 1:22-cv-02128 |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | Judge J. Philip Calabrese |
| | ) | |
| | ) | Magistrate Judge |
| v. | ) | Jennifer Dowdell Armstrong |
| | ) | |
| NEENAH, INC., | ) | |
| | ) | |
| Defendant and Counter-Claimant. | ) | |
| | ) | |

## OPINION AND ORDER

First Brands Group, LLC placed $500,000 in escrow while negotiating to purchase a paper processing facility from Neenah, Inc. When the deal fell apart, First Brands filed suit seeking a declaratory judgment that it is entitled to recoup the funds it placed in escrow. Neenah removed the case to federal court and counterclaimed. Each party moves to dismiss the claims the other brings against it. KeyBank, which is not a party to this dispute, continues to hold the money as escrow agent. At bottom, the terms of the escrow agreement determine which party is entitled to the funds placed in escrow, which is the central matter in dispute. In fact, it is the only mater in dispute because neither party states any other claim as a matter of law.

## STATEMENT OF FACTS

On the pending cross-motions to dismiss, the parties largely agree on the following material facts.

### A.    Letter of Intent

Neenah was a paper manufacturer before it merged with another company in July 2022.  (ECF No. 5, ¶¶ 4 & 5, PageID #129.)  First Brands manufactures and distributes automotive and industrial equipment and parts.  (ECF No. 1-1, PageID #31.)  At the times relevant to this dispute, Neenah owned a paper processing facility in Appleton, Wisconsin.  (*Id.*, ¶ 12, PageID #9–10; ECF No. 5, ¶ 6, PageID #129.)

In March 2022, First Brands sent Neenah a letter of intent to purchase the Appleton facility.  (ECF No. 1-1, ¶ 12, PageID #9–10; *id.*, PageID #31; ECF No. 5, ¶ 6, PageID #129.)  First Brands stated its intent to acquire 16 acres of real property, a paper mill, a saturator facility, an office building and furnishings, a dam on the Fox River, and a variety of machinery and equipment—collectively defined as the "Acquired Assets."  (ECF No. 1-1, PageID #34.)  The letter proposed the timing, consideration, earnest money deposit in escrow, and other terms of the deal.  (*Id.*, ¶¶ 1–3, PageID #31–33.)  For the most part, the letter only constituted a proposal:  it expressly disclaimed "any obligation of any kind whatsoever with respect to any transaction involving the Acquired Assets except as may be set forth in the duly executed and delivered Definitive Agreements."  (*Id.*, PageID #33.)  Four provisions in the letter bind the parties—confidentiality, non-solicitation, expenses, and the governing law—none of which is relevant here.  (*Id.*)  The chief financial officer of First Brands and the president of Neenah signed the letter of intent.  (*Id.*)

### B.    Escrow Agreement

On the same day on which the parties signed the letter of intent, executives from First Brands, Neenah, and KeyBank National Association (as escrow agent)

entered into an escrow agreement.  (ECF No. 1-1, ¶ 17, PageID #10; *id.*, PageID #19–29; ECF No. 5, ¶ 13, PageID #130.)  In its recitals, the escrow agreement (A) confirms that First Brands and Neenah entered into a letter of intent for First Brands to acquire Neenah's paper facility and (B) obligates First Brands to deposit $500,000 into escrow.  (*Id.*, PageID #19.)  The agreement charged the escrow agent with "administer[ing]" the "Escrow Funds in accordance with the express provisions of this Escrow Agreement."  (*Id.*)  The agreement defines "Escrow Funds" to include the $500,000 principal "together with all interest and other proceeds earned thereon as well as on such interest and proceeds."  (*Id.*)  Consistent with the agreement, First Brands placed $500,000 of earnest money in an escrow account held by KeyBank, where it remains.  (ECF No. 1-1, ¶ 18, PageID #11; ECF No. 5, ¶ 24, PageID #132.)

Although the parties intended the earnest money deposited in escrow to go toward the purchase price of the Appleton facility, the agreement accounts for other eventualities.  In particular, Section 4.2 of the agreement directs KeyBank to distribute funds from the escrow account in five circumstances.  The first three are as follows:

> (a)    upon completion of the deal, to Neenah;

> (b)    "[u]pon receipt by Escrow Agent of written certification from First Brands . . . that Neenah has declined to consummate, or failed to confirm in writing within five Business Days of a request for the same, its willingness to consummate," the transaction, to First Brands; or

3

(c)     "[u]pon receipt by Escrow Agent of written certification from Neenah . . . that First Brands has declined to consummate, or failed to confirm in writing within five Business Days of a request for the same, its willingness to consummate," the transaction, to Neenah.

(ECF No. 1-1, PageID #21.)    Section 4.2(d) provides for the two remaining circumstances if KeyBank received no direction before May 31, 2022 (or another date to which First Brands and Neenah agreed). (*Id.*) First, on joint certification of First Brands and Neenah, KeyBank shall disburse the funds to First Brands. (*Id.*, § 4.2(d)(i).) "[I]n all other cases," KeyBank shall "release the full amount of the Escrow Funds to Neenah." (*Id.*, § 4.2(d)(ii).)

In its entirety, Section 4.2 of the escrow agreement provides:

4.2 Escrow Agent shall make distributions from the Escrow Funds as follows:

(a) Upon receipt by Escrow Agent of written certification from either Interested Party (which written certification may be delivered via e-mail and shall, in any event, include a copy to the other Interested Party) that the Acquisition has been consummated, Escrow Agent shall release the full amount of the Escrow Funds to Neenah in accordance with the wiring instructions set forth herein;

(b) Upon receipt by Escrow Agent of written certification from First Brands (which written certification may be delivered via e-mail and shall, in any event, include a copy to Neenah) that Neenah has declined to consummate, or failed to confirm in writing within five Business Days of a request for the same, its willingness to consummate, the Acquisition, Escrow Agent shall release the full amount of the Escrow Funds to First Brands in accordance with the wiring instructions set forth herein;

(c) Upon receipt by Escrow Agent of written certification from Neenah (which written certification may be delivered via e-mail and shall, in any event, include a copy to First Brands) that First Brands has declined to consummate, or failed to confirm in writing within five

4

Business Days of a request for the same, its willingness to consummate, the Acquisition, Escrow Agent shall release the full amount of the Escrow Funds to Neenah in accordance with the wiring instructions set forth herein; or

(d) In the event the Escrow Agent has not been directed to disburse the Escrow Funds on or prior to May 31, 2022 (or such later date as the Interested Parties may jointly notify the Escrow Agent of (which notification may be provided via email)) pursuant to clause (a), (b) or (c) above, then, (i) within two business days of such date the Escrow Agent has received a joint written certification from both Interested Parties (which written certification may be delivered via e-mail) that the Interested Parties have discontinued efforts to consummate the Acquisition, Escrow Agent shall release the full amount of the Escrow Funds to First Brands in accordance with the wiring instructions set forth herein and (ii) in all other cases, the Escrow Agent shall, within five Business Days of May 31, 2022 (or such later date as provided to the Escrow Agent in writing by the Interested Parties acting jointly), release the full amount of the Escrow Funds to Neenah in accordance with the wiring instructions set forth herein.

(*Id.*)

In the event of a dispute regarding "the delivery, distribution ownership, right of possession and/or disposition of the Escrow Funds," the escrow agent may "retain in its possession . . . the Escrow Funds until such dispute" is resolved either by "mutual written agreement" or court order.  (ECF No. 1-1, § 7, PageID #22.)  To resolve any dispute, the parties consented to the jurisdiction of the State and federal courts in Ohio and to application of Delaware substantive law.  (*Id.*, §§ 8 & 12(c); PageID #22–23 & #25.)

## C.   Negotiations Fail

In April 2022, First Brands sent Neenah a draft asset purchase agreement. (ECF No. 1-1, ¶ 21, PageID #11; ECF No. 5, ¶ 26, PageID #132.)  Two weeks later, Neenah sent a counterproposal with significant revisions.  (ECF No. 1-1, ¶¶ 22 & 23,

PageID #11; ECF No. 5, ¶ 27, PageID #133.)  Approximately four weeks later, First Brands advised that the parties would not be able to agree on a deal and requested that Neenah deliver a joint notice to the escrow agent to return the funds deposited in escrow to First Brands.  (ECF No. 1-1, ¶¶ 26 & 28, PageID #12; ECF No. 5, ¶¶ 31 & 32, PageID #133.)  In Neenah's version, with that communication First Brands "declined to consummate the transaction."  (ECF No. 5, ¶ 33, PageID #133.)  Neenah responded that it stood "ready and willing to proceed with the consummation of the transaction."  (ECF No. 1-1, ¶ 29, PageID #12; ECF No. 5, ¶ 35, PageID #134.)  Whatever the case, no party provided a written certification to the escrow agent, and the parties did not deliver a joint notice either.  Instead, they continued to posture but still had no agreement on a deal.  (ECF No. 1-1, ¶ 29, PageID #12; ECF No. 5, ¶ 35, PageID #134.)

In June 2022—after the May 31 deadline in Section 4.2 of the escrow agreement—First Brands notified the escrow agent "of a dispute between First Brands and Neenah regarding the Escrow Funds" and demanded "that KeyBank hold" the funds "until [it] receives a joint written certification or court order directing KeyBank how to disburse the Escrow Funds."  (ECF No. 1-1, PageID #36; *see also id.*, ¶ 30, PageID #12; ECF No. 5, ¶ 38, PageID #134.)  The following week, First Brands sent Neenah a letter demanding that it deliver a joint notice to the escrow agent to release the funds to First Brands.  (ECF No. 1-1, ¶ 31, PageID #13; ECF No. 5, ¶ 39, PageID #134; *see also* ECF No. 4-3, PageID #120.)  Neenah refused and reciprocally demanded that First Brands direct KeyBank to release the funds to Neenah.  (ECF

No. 1-1, ¶ 32, PageID #13; ECF No. 5, ¶ 43, PageID #135.)  KeyBank continues to hold the $500,000 deposited in escrow.  (ECF No. 1-1, ¶ 33, PageID #13; ECF No. 5, ¶ 25, PageID #132.)

## STATEMENT OF THE CASE

In October 2022, First Brands sued Neenah in State court to recover the escrow funds.  (ECF No. 1-1.)  On the basis of diversity jurisdiction, Neenah removed the case to federal court, 28 U.S.C. §§ 1332, 1441.  (ECF No. 1.)  First Brands seeks a declaratory judgment and damages on theories of breach of contract, replevin, and unjust enrichment.  (ECF No. 1-1, ¶¶ 34–61, PageID #13–16.)  Neenah counterclaims, seeking a declaratory judgment and damages for breach of contract and in tort.  (ECF No. 5, ¶¶ 51–76, PageID #136–41.)

Each party moves to dismiss the other's claims.  On August 31, 2023, the Court heard oral argument on the cross-motions to dismiss and took the matter under advisement.  (Minutes, Aug. 31, 2023.)

## JURISDICTION

Diversity jurisdiction requires complete diversity of adverse parties and an amount in controversy exceeding $75,000.  28 U.S.C. § 1332(a); *see also Delay v. Rosenthal Collins Group, Inc.*, 585 F.3d 1003, 1005 (6th Cir. 2009).  Although no party raises the issue, the Court has an independent obligation to examine its own jurisdiction.  *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted); *Mercurio v. American Express Centurion Bank*, 363 F. Supp. 2d 936, 938 (N.D. Ohio 2005).

Plaintiff "is a Delaware limited liability company, with its principal place of business in Cleveland, Ohio"; Defendant "is a Delaware corporation, with its principal place of business in Alpharetta, Georgia." (ECF No. 1-1, ¶¶ 5–6, PageID #9.) Although Delaware chartered each entity, that common citizenship does not defeat diversity jurisdiction because "an LLC's state of organization does not establish its citizenship." *Akno 1010 Mkt. St. St. Louis Mo. LLC v. Nahid Pourtaghi*, 43 F.4th 624, 626 (6th Cir. 2022). Instead, an LLC "ha[s] the citizenship of each partner or member," whereas a corporation "is a citizen of its states of organization and principal place of business." *Delay*, 585 F.3d at 1005.

First Brands has a single member who resides in Ohio. (ECF No. 1-1, ¶ 6, PageID #32; ECF No. 5, ¶¶ 2 & 3, PageID #129.) Accordingly, Plaintiff is a citizen of Ohio. Defendant is a citizen of Delaware and Georgia. Therefore, the parties are diverse, and the amount in controversy exceeds the statutory amount in controversy. Therefore, the Court is satisfied that it has jurisdiction.

## GOVERNING LEGAL STANDARD

In any civil action, a complaint must "state[] a claim for relief that is plausible, when measured against the elements" of a claim. *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020) (citing *Binno v. American Bar Ass'n*, 826 F.3d 338, 345–46 (6th Cir. 2016)). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court

8

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

In assessing plausibility, the Court construes factual allegations in the complaint in the light most favorable to the plaintiff, accepts the factual allegations of the complaint as true, and draw all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). This same standard applies to allegations in a counterclaim that a plaintiff has moved to dismiss. *Eclipse Resources-Ohio, LLC v. Madzia*, 717 F. App'x 586, 593–94 (6th Cir. 2017) (citation omitted). In reviewing a motion to dismiss, the Court distinguishes between "well-pled factual allegations," which it must treat as true, and "naked assertions," which it need not treat as true. *Iqbal*, 556 U.S. at 628. The Court will also not accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations . . . ." *Edison v. Tennessee Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

On a motion under Rule 12(b)(6), the Court's inquiry is limited to the content of the complaint, although it may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint" or "to a motion to dismiss" as long those exhibits are referenced in the complaint and central to the claims. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001); *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). In

this case, First Brands attached to the complaint the escrow agreement, letter of intent, and June 7 demand letter from First Brands to KeyBank. (ECF No. 1-1, PageID #18, #30, & #35.) Because these exhibits are "referred to in the complaint and are central to the claims therein" (*see* ECF No. 1-1, ¶¶ 12, 17, 30, PageID #9, #10, & #12), the Court may consider it on a motion to dismiss although not formally a part of the pleadings without converting the motion to one for summary judgment, *DeShelter v. FCA US LLC*, No. 3:18 CV 78, 2018 WL 6257377, at *4 (N.D. Ohio Nov. 30, 2018) (quoting *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016)). Neenah's responsive pleading attached letters exchanged between the parties on June 16 and June 24, 2022. (ECF No. 5-1, PageID #145; ECF No. 5-2, PageID #147.) Again, these letters are referenced in the counterclaim and relate to the parties' respective claims, so the Court considers them as well. (ECF No. 5, ¶¶ 40 & 44, PageID #134 & #135.)

## ANALYSIS

Both parties maintain they are entitled to the $500,000 that KeyBank holds in escrow—a dispute that the escrow agreement controls. "When interpreting a contract in a diversity case, the court applies the law, including the choice of law rules, of the forum state—in this case," Ohio. *Whitehouse Condo. Group, LLC v. Cincinnati Ins. Co.*, 569 F. App'x 413, 415 (6th Cir. 2014). In Ohio, "[t]he law of the state chosen by the parties to govern their contractual rights and duties will be applied" unless that State has "no substantial relationship to the parties or the transaction" or that State's laws are "contrary to a fundamental policy of a state which has a materially greater interest" in the issue. *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 6 Ohio

10

St. 3d 436, 438, 453 N.E.2d 683 (Ohio 1983) (quoting Restatement (Second) of Conflict of Laws, § 187 (1971)).  In other words, under Ohio law, "the choice of law of the parties to a contract should govern." *Bridgestone Americas Tire Operations, LLC v. Harris*, 2020-Ohio-76, 150 N.E.3d 1270, ¶ 70 (Ohio Ct. App. 2020).  The escrow agreement provides that the substantive law of Delaware governs.  (ECF No. 1-1, § 12(c), PageID #25.)  Applying Ohio law to the escrow agreement's choice-of-law clause, then, the Court interprets the agreement according to Delaware's substantive law.

According to the Delaware Supreme Court: "When interpreting a contract, the role of a court is to effectuate the parties' intent.  In doing so, [the Court is] constrained by a combination of the parties' words and the plain meaning of those words where no special meaning is intended." *Lorillard Tobacco Co. v. American Legacy Found.*, 903 A.2d 728, 739 (Del. 2006).  "When the language of a contract is clear and unequivocal, a party will be bound by its plain meaning because creating an ambiguity where none exists could, in effect, create a new contract." *Id.* (cleaned up).  "Courts will not torture contractual terms to impart ambiguity where ordinary meaning leaves no room for uncertainty." *Rhone-Poulenc Basic Chems. Co. v. American Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992).

## I.    Declaratory Judgment

First Brands seeks a declaratory judgment that (1) the letter of intent did not create a binding obligation to purchase the Appleton facility; (2) the parties did not satisfy the conditions precedent to the asset purchase; and (3) Neenah must direct the escrow agent to disburse the funds held in escrow to First Brands.  (ECF No. 1-1,

11

¶ 39, PageID #13.)  For its part, Neenah seeks a declaration entitling it to the escrow funds and prejudgment interest, costs, and its attorneys' fees.  (ECF No. 5, ¶¶ 57, 58 & 63, PageID #137–39.)

First Brands seeks declaratory relief under Section 2721.02(A) of the Ohio Revised Code; Neenah seeks the same remedy under federal law.  Both parties ask the Court to "declare the[ir] rights and other legal relations" respecting the escrow funds.  28 U.S.C. § 2201(a); Ohio Rev. Code § 2721.02(A) (similar); *see also Abbott Labs. v. Gardner*, 387 U.S. 136, 142 (1967).  "[W]here there is controversy as to the meaning and effect of a written contract[,] interpretation may be sought from and made by the declaratory judgment of a court having jurisdiction over the parties." *Panhandle Eastern Pipe Line Co. v. Michigan Consol. Gas Co.*, 177 F.2d 942, 944 (6th Cir. 1949); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 563 (6th Cir. 2008).

The parties' competing claims for declaratory relief are mutually exclusive.  Either First Brands or Neenah is entitled to the escrow funds.  The plain language of the agreement admits no other option.  Therefore, consistent with the Court's Civil Standing Order, the Court will treat the cross-motions to dismiss these particular claims as motions for judgment on the pleadings under Rule 12(c).  (*See* ECF No. 11, PageID #182 (citing Standing Order on Civil Procedures, § 3).)  "A motion for judgment on the pleadings . . . generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6)."  *Bates v. Green Farms Condo. Ass'n.*, 958 F.3d 470, 480 (6th Cir. 2020) (citing *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014)).  The difference between the two rules is one of timing, *see Hunter v. Ohio*

12

*Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003), and here "the pleadings are closed," Fed. R. Civ. P. 12(c).

### I.A.    Escrow Agreement

The Court begins with the third declaration that First Brands seeks and the competing declaratory judgment in Neenah's counterclaim because the escrow agreement determines the rights of the parties and goes a long way toward resolving this action.

Section 4.2 of the escrow agreement directs KeyBank to distribute the escrow funds to First Brand or Neenah depending on the circumstances.  (ECF No. 1-1, PageID #21.)    Basically, Section 4.2 describes five eventualities—four-specific circumstances are set forth in subsections (a) though (d)(i), plus a catchall covering "all other cases":  (a) the acquisition closes; (b) Neenah refused to complete the transaction; (c) First Brands refused to complete the acquisition; (d)(i) none of those events occur by May 31, 2022, and the parties discontinue their efforts to reach a deal; and (d)(ii) all other cases.  (*Id.*)

A party claiming the funds in escrow triggers the first three provisions, those described in subsections (a) through (c) of Section 4.2, by providing "written certification" to the escrow agent with notice to the other party.  If the parties discontinue efforts to complete the transaction, which subsection (d)(i) addresses, a "joint written certification" to the escrow agent triggers return of the funds to First Brands.  In "all other cases," the catchall provision directs the escrow agent to disburse the funds to Neenah.

By process of elimination, this case falls squarely within the catchall provision in Section 4.2(d)(ii).  Subsection (a) does not apply because the parties did not complete the transaction.  Neither party certified to the escrow agent that the other "declined to consummate" the deal; therefore, subsections (b) and (c) do not apply. That leaves subsection (d).

The undisputed record shows that the parties did not jointly certify to the escrow agent that they had discontinued their efforts to reach an agreement on a transaction.  On May 18, 2022, First Brands requested that Neenah agree to deliver a joint notice to the escrow agent that the parties were unable to reach an agreement to complete the transaction.    (ECF No. 1-1, ¶¶ 26 & 28, PageID #12.)  First Brands argues that this request triggers Section 4.2(d)(i) of the escrow agreement, entitling it to return of the earnest money placed in escrow.  (ECF No. 11, PageID #187–88; ECF No. 12, PageID #209–10.)  But a request from First Brands to *Neenah* does not effect "joint written certification" to the *escrow agent*, which is what Section 4.2(d)(i) expressly requires.  KeyBank first received a communication on June 7, 2022 when First Brands advised it that a dispute had arisen between the parties.  (ECF No. 1-1, ¶ 30, PageID #12.)  That communication was not a joint written certification under subsection (d)(i).  Accordingly, by its plain terms, that provision does not apply.

In any event, if Neenah refused to make a joint certification, First Brands had another option under the escrow agreement.  Under Section 4.2(b), First Brands could unilaterally certify that Neenah "has declined to consummate, or failed to confirm in writing . . . its willingness to consummate, the Acquisition."  (ECF No. 1-1, PageID

#21.)  Notably, First Brands failed to send any such certification to the escrow agent.
In response to this fact, First Brands maintains that making a unilateral certification
pursuant to Section 4.2(b) would have resulted in litigation.  It might well have.  But
First Brands had this right under the escrow agreement and did not avail itself of it.

Where, as here, no other provision applies, the catchall provision in subsection
(d)(ii) directs KeyBank to disburse the funds held in escrow to Neenah.  According to
that provision, "in all other cases, the Escrow Agent shall . . . release the full amount
of the Escrow Funds to Neenah."  (*Id.*, PageID #21.)  That provision governs here.
Perhaps making Neenah the payee of last resort if no other provision applied results
from a scrivener's error.  But no party makes such an argument.  Therefore, the Court
is bound under Delaware law to give effect to the plain terms to which the parties
agreed.

### I.B.  Letter of Intent

First Brands claims the escrow funds by appealing to the letter of intent,
arguing that it bears on interpretation of the escrow agreement.  (ECF No. 11, PageID
#186; ECF No. 12, PageID #208.)  In the letter of intent, First Brands "submit[ted] a
proposal to acquire the Appleton, Wisconsin facility," noting the "prospect of
acquiring" the facility.  (ECF No. 1-1, PageID #31.)  Upon acceptance of the proposal,
First Brands agreed to "make an earnest money deposit" of $500,000, subject to
certain terms and conditions that will be set forth in a separate mutually agreeable
contract.  (*Id.*, ¶ 3.)  The letter of intent also provided that "each party shall bear its
own costs and expenses incurred in connection with this letter of intent, due diligence

and the transaction," except as provided in the escrow agreement.  (*Id.*, ¶ 9, PageID #32.)

The letter of intent concludes with an important disclaimer:  "this proposal is not intended to and shall not create a legally binding agreement or obligation in any respect, and it shall not create any rights, either expressed or implied, in favor of any person."  (ECF No. 1-1, PageID #33.)  It goes to state that neither First Brands nor Neenah "shall have any obligation of any kind whatsoever with respect to any transaction involving the Acquired Assets except as may be set forth in the duly executed and delivered Definitive Agreements," which include the escrow agreement as an "ancillary agreement" within the letter's definition of "Definitive Agreements." (*Id.*, ¶ 4, PageID #32.)

Put simply, by its terms, the letter of intent creates no "legally binding agreement or obligation in any respect."  With respect to the earnest money, a separate agreement will control.  Lest there be any doubt, the last sentence of the letter agreement reiterates that First Brands and Neenah have obligations with respect to any transaction involving the Appleton facility only as set forth in separate executed agreements.  In other words, the disclaimer refers the parties (and the Court) back to the escrow agreement—a separate, duly executed, and definitive agreement that specifically controls the deposit of the earnest money with KeyBank as the escrow agent.  (*See* ECF 1-1, ¶ 41, PageID #14.)  In this way, the letter of intent reinforces the binding obligations to which the parties agreed in the escrow agreement.  It does not modify, supersede, or otherwise color interpretation of the

16

escrow agreement.  At oral argument, First Brands relied on the letter agreement's provision regarding expenses in Section 9 to color interpretation of the escrow agreement or, at least, to create an ambiguity regarding its interpretation.  But the plain language of the letter of intent forecloses such an argument.  In any event, Section 9 creates an exception for "Definitive Agreements" such as the escrow agreement.

In this way, the plain language of all the parties' relevant writings yield the same result.  *See Florida Chem. Co., LLC v. Flotek Indus.*, 262 A.3d 1066, 1080 (Del. Ch. 2021) ("[A]ll writings that are part of the same transaction are interpreted together.").  Because the plain language of the escrow agreement (and the letter of intent) makes the outcome clear, the Court sees no need to analyze further the Delaware authorities that the parties discuss in their briefs.  Finally, for the reasons explained, the first declaration First Brands seeks—that the letter of intent did not create a binding obligation to purchase the Appleton facility (ECF No. 1-1, ¶ 39, PageID #13)—has no bearing on that matter in controversy: namely, entitlement to the funds deposited in escrow.  Therefore, the Court declines to issue the declaration sought.

### I.C.  Conditions Precedent

First Brands also seeks a declaration that the necessary conditions for reaching agreement on a transaction involving the Appleton facility were not met. (*Id.*)  Again, this relief does not appear to affect interpretation of the escrow agreement (except as already explained) or to present any matter of dispute between the parties.  Because it has no bearing on determining entitlement to the escrow

funds or to the parties' respective claims for breach of contract, it is not a matter in controversy, and the Court declines to issue this declaration.

### I.D.  Mirror-Image Rule

First Brands argues that the mirror-image rule requires dismissal of Neenah's declaratory-judgment counterclaim and bars declaratory relief in favor of Neenah. (ECF No. 11, PageID #183–84.)  Under that rule, "when a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose." *Federal Deposit Ins. Corp. v. Project Dev. Corp.*, No. 86-5490, 1987 WL 37488, at *3 (6th Cir. 1987); *see also Malibu Media, LLC v. Ricupero*, 705 F. App'x 402, 406 (6th Cir. 2017); *EHPLabs Rsch., LLC v. Smith*, No. 5:22-cv-653, 2022 WL 3139604, at *7 (N.D. Ohio Aug. 5, 2022); 3 Moore's Federal Practice, Civil § 13.41, Lexis (database updated June 2023).  In a declaratory judgement action, mirror-image claims may be dismissed "when it is clear that there is a complete identity of factual and legal issues between the complaint and the counterclaim." *Endless River Techs. LLC v. Trans Union LLC*, No. 1:18-cv-936, 2019 WL 13090252, at *3 (N.D. Ohio Aug. 14, 2019) (citation and internal quotation marks omitted).

Here, Neenah's counterclaim serves a purpose.  One party or the other is entitled to the escrow funds.  Therefore, the counterclaim for a declaratory judgment promotes judicial economy by allowing the Court and the parties to reach a definitive judgment that resolves the dispute over disbursement of the funds under the escrow agreement.  Without the counterclaim, further proceedings would be necessary to reach a judgment that will bring the central issue in the lawsuit to a close.  Nor does the rule operate to prevent a party from obtaining relief to which it is entitled.

18

\*      \*      \*

In this case, the parties seek judicial resolution of a dispute over the earnest money held in escrow.  A "declaratory ruling is appropriate" because it will "serve a useful purpose in clarifying and settling the legal relations in issue, and . . . afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Grand Trunk W. R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). For these reasons, the Court **DECLARES** that the escrow agreement entitles Neenah to the escrow funds and directs the escrow agent to deliver the funds to Neenah as provided in the escrow agreement.  As to the other declarations First Brands seeks, they serve no similar "useful purpose in clarifying and settling the legal relations" between the parties, *id.*, so the Court declines to address them further.

## II.    Breach of Contract

Each party claims that the other breached the escrow agreement.  Both move to dismiss under Rule 12(b)(6).  "In order to survive a motion to dismiss for failure to state a breach of contract claim, the [nonmoving party] must demonstrate: first, the existence of the contract"; "second, the breach of an obligation imposed by that contract; and third," damages.  *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).  The Court considers the cross-motions in turn.

### II.A.   First Brands

At this stage of the proceedings, First Brands advances two separate theories for its claim that Neenah breached the escrow agreement.

### II.A.1. Section 4.2(b) of the Escrow Agreement

In its complaint, First Brands alleges that Neenah breached the escrow agreement by "failing to instruct the Escrow Agent to release the funds held in escrow to First Brands."  (ECF No. 1-1, ¶ 46, PageID # 14.)  First Brands identifies no contractual language obligating Neenah to make such an instruction.  In the breach of contract segment of its complaint, First Brands refers only to Section 4.2(b) of the escrow agreement.  (*Id.*, ¶ 43.)  First Brands interprets Section 4.2(b) to mean "that the earnest money would be returned to First Brands where no transaction was consummated."  (*Id.*, ¶ 19, PageID #11.)  But that is not what it says.

Section 4.2(b) directs the escrow agent to distribute the funds to First Brands where it receives a written certification from First Brands that Neenah declines to complete the acquisition of the Appleton facility or to confirm its willingness to do so.  (ECF No. 1-1, § 4.2(b), PageID #21.)  That language does not require Neenah to take any action.  To the contrary, it affords First Brands a unilateral opportunity to obtain a return of the earnest money it deposited in escrow.  But it did not take that step here.  Without a written certification from First Brands to the escrow agent, with notice to Neenah, Section 4.2(b) does not apply.  Nor does the escrow agreement obligate Neenah to "instruct the Escrow Agent to release the funds held in escrow to First Brands."  (*Id.*, ¶ 46, PageID #14.)  Therefore, the contract claim First Brands pleads fails to state a claim as a matter of law.

### II.A.2. Implied Covenant of Good Faith and Fair Dealing

In its briefs, First Brands argues a different breach of contract theory.  (ECF No. 12.)  In opposing dismissal of its contract claim, First Brands maintains that, by

20

"refusing to jointly certify" an impasse to KeyBank under Section 4.2(d)(i), Neenah breached the implied covenant of good faith and fair dealing. (*Id.*, PageID #212.) This argument has two shortcomings. First, First Brands failed expressly to plead it. It comes closest to articulating this theory in the complaint where it alleges that, "[b]y failing to instruct the Escrow Agent to release the funds held in escrow to First Brands, Neenah has breached its obligations under the Escrow Agreement." (ECF No. 1-1, ¶ 46, PageID #14.) But a natural reading of the complaint shows that this claim refers to a breach of Section 4.2(b), discussed in the immediately preceding allegations (*see id.*, ¶ 43), not the implied covenant of good faith and fair dealing, which the complaint does not mention (*id.*, ¶¶ 40–47). Indeed, the complaint does not reference good faith and fair dealing at all. None of the authorities under Delaware law on which First Brands relies, even if that State's pleading rules controlled, suggests that it states a claim even without mentioning the implied covenant. (*See* ECF No. 21.) Plaintiff must state a claim in its complaint, not in a brief. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483–84 (6th Cir. 2020). While all contracts imply a covenant of good faith and fair dealing, a breach of that covenant is not implicit in all breach of contract claims.

Second, even if pled, First Brands has not stated a claim for breach of the implied covenant of good faith and fair dealing. Under Delaware law, breach of that covenant requires "a specific implied contractual obligation," a breach, and damages. *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1117–18 (Del. 2022). The "implied covenant [of good faith and fair dealing] is inherent in all contracts and ensures that

21

parties do not frustrate the fruits of the bargain by acting arbitrarily or unreasonably.*" *Id.* at 1116 (cleaned up).  It is "a judicial tool used to imply terms in a contract that protect the reasonable expectations of the parties." *Id.* at 1117 (citation omitted).  Specifically, the covenant "is used to infer contract terms 'to handle developments or contractual gaps that the asserting party pleads neither party anticipated [at the time of contracting]." *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) (quoting *Nemec v. Shrader*, 991 A.2d 1120, 1125 (Del. 2010)).  It protects parties against arbitrary or unreasonable conduct.  *Id.*

The Delaware Supreme Court cautions that the implied covenant "is not an equitable remedy for rebalancing economic interests after events that could have been anticipated, but were not, that later adversely affected one party to a contract." *Nemec*, 991 A.2d at 1128.  For this reason, it is a "limited and extraordinary legal remedy." *Id.*  Further, it "does not apply when the contract addresses the conduct at issue." *Nationwide Emerging Managers, LLC v. NorthPointe Holdings, LLC*, 112 A.3d 878, 896 (Del. 2015).  Instead, it applies "only when the contract is truly silent concerning the matter at hand." *Oxbow Carbon & Mins. Holdings, Inc. v. Crestview-Oxbow Acquisition, LCC*, 202 A.3d 482, 507 (Del. 2019) (internal quotation marks and footnote omitted).  These limitations on resort to the implied covenant have special force where, as here, "the parties are sophisticated business persons or entities." *Id.* at 508.

First Brands argues that Neenah's refusal jointly to certify return of the escrow funds to First Brands constituted a breach of the implied covenant.  (ECF No. 12,

PageID #213.)  Specifically, First Brands points to a gap in the escrow agreement—not addressing a party's failure to provide a joint certification to the escrow agent—that the implied covenant of good faith and fair dealing fills.  (*Id.*)  But there are no gaps in the escrow agreement for the implied covenant to fill.  Section 4.2(d)(i) calls for a joint certification where both "Interested Parties have discontinued efforts to consummate the Acquisition."  (ECF No. 1-1, PageID #21.)  That did not happen here.  The record shows that Neenah reasserted its "read[iness] and willing[ness] to proceed with the consummation of the transaction."  (*Id.*, ¶ 29, PageID #12.)  Even if Neenah took that position strategically, pretextually, or even in bad faith, Section 4.2(b) authorized First Brands to act unilaterally—but it did not.  (*Id.*, PageID #21.)  Section 4.2(b) of the escrow agreement places no obligation on Neenah.  As discussed, Section 4.2(d)(ii) addresses "all other cases."  Therefore, the escrow agreement contains no gaps for the implied covenant of good faith and fair dealing to fill, and this claim—even if pled—fails because "the contract addresses the conduct at issue."  *Nationwide Emerging Managers*, 112 A.3d at 896.

At the pleading stage, it is not implausible that Neenah acted in bad faith or contrary to the parties' understanding with the specific aim of securing disbursement of the earnest money that First Brands placed in escrow.  But the escrow agreement speaks specifically to the conduct at issue, and the parties are sophisticated entities.  Accordingly, under Delaware law, the Court concludes that First Brands cannot state a claim for breach of the implied covenant of good faith and fair dealing.  For all these reasons, the Court **GRANTS** Neenah's motion to dismiss Count II of the complaint.

### II.B.  Neenah

Neenah also asserts a breach of the covenant of good faith and fair dealing implicit in the escrow agreement.  Neenah alleges that First Brands sent a "false Dispute Letter to KeyBank and institute[ed] this suit over the disbursement of the escrow funds."  (ECF No. 5, ¶ 67, PageID #139.)  According to Neenah, this conduct "arbitrarily and unreasonably prevented Neenah from receiving the earnest money deposit" in a timely fashion.  (*Id.*; *see also* ECF No. 5, ¶ 69, PageID #140.)

Neenah fails to state a claim for breach of the implied covenant of good faith and fair dealing for at least three reasons.  First, Neenah identifies no gap in the escrow agreement for the implied covenant to fill.  Section 7 of the agreement covers resolution of "any dispute" related to "delivery, distribution ownership, right of possession, and/or disposition of the Escrow Funds."  (ECF No. 1-1, PageID #22.)  It authorizes KeyBank "(at its sole option and election) to retain" the funds held in escrow "in its possession without liability to anyone . . . until such dispute" is resolved.  (*Id.*, § 7.)  In this way, the parties' agreement expressly contemplates disputes over the escrow funds and directs the escrow agent to retain the funds "without liability to anyone" until resolution of any dispute.  (*Id.*)

Even though Neenah alleges that First Brands acted "arbitrarily and unreasonably" (ECF No. 5, ¶ 67, PageID #139), the escrow agreement "addresses the conduct at issue," *Nationwide Emerging Managers*, 112 A.3d at 896.  Moreover, "the parties are sophisticated business[es]," considerably narrowing the room for operation of the implied covenant, *see Oxbow Carbon & Mins. Holdings*, 202 A.3d at

24

507, so much so that it fails to provide a legal basis for second guessing the parties' agreement.

Second, at oral argument, Neenah represented that its damages for the breach it claims amount to interest on the earnest money.  But under Delaware law, prejudgment "interest accumulates from the date payment was due." *Brandywine Smyrna, Inc. v. Millennium Builders, LLC*, 34 A.3d 482, 486 (Del. 2011).  Under the dispute resolution section of the escrow agreement, disbursement of the funds is due only on "final order, decree or judgment of a court," including the time to appeal. (ECF No. 1-1, § 7, PageID #22.)  In other words, the escrow agreement forecloses the damages Neenah claims.  More broadly, and in any event, the agreement provides that, during any dispute, the escrow agent may hold the earnest money "without liability *to anyone*," meaning that First Brands may contest proper interpretation and application of the escrow agreement without liability and that Neenah is not entitled to interest or other damages except as provided.  (*Id.* (emphasis added).)

Third, Neenah asserted an entitlement to attorneys' fees at oral argument and in the prayer for relief of its counterclaim (and as part of its claim for declaratory relief).  (ECF No. 5, ¶ E., PageID #141; *id.*, ¶ 63, PageID #139.)  But the escrow agreement contains *no* provision abrogating the traditional American Rule that each party bears its own fees and expenses.  To the extent the contract speaks to fee-shifting at all, Section 5(a) shifts attorney's fees from First Brands to KeyBank, but not to Neenah.  (*Id.*, § 5, PageID #21–22.)  Also, the agreement indemnifies KeyBank but not the prevailing party in any dispute between First Brands and Neenah.  (*Id.*,

PageID #22.)  Absent a controlling contractual term, the American Rule "generally require[s] parties to pay their own attorney's fees."  *Wesco Ins. Co. v. Roderick Linton Belfance, LLP*, 39 F.4th 326, 336–37 (6th Cir. 2022).  The escrow agreement provides no basis for departing from that general rule.  *See id.* at 337.  Therefore, Neenah is not entitled to an award of fees.

For these reasons, Neenah has not stated a claim for breach of contract, and the Court **GRANTS** First Brands' motion to dismiss the breach of contract counterclaim.

## III.    Other Claims

First Brands brings two additional claims—for replevin and unjust enrichment—and Neenah asserts a claim for tortious interference.  Neither party argues which State's substantive law supplies the rule of decision for these noncontractual tort claims.  The Court assumes that Ohio law applies under the factors in Section 145 of the Restatement (Second) of Conflicts of Laws.  *See Ohayon v. Safeco Ins. Co.*, 91 Ohio St. 3d 474, 476, 2001-Ohio-100, 747 N.E.2d 206 (2001); *The Scott Fetzer Co. v. American Home Assurance Co.*, 2022-Ohio-1062, ¶ 11 (Ohio Ct. App.).

### III.A. Replevin

First Brands claims a right immediately to possess the escrow funds under the doctrine of replevin.  (ECF No. 1-1, ¶ 53, PageID #15.)  Replevin allows a person to repossess personal property.  *See, e.g., Ingram v. Wayne Cnty., Mich.*, No. 22-1262, 2023 WL 5622914, at *18 (6th Cir. Aug. 31, 2023) (Thapar, J., concurring).  Ohio codified a process for replevin in which "possession of specific personal property may

be recovered in a civil action prior to the entry of judgment."  Ohio Rev. Code §§ 2737.01, *et seq*.  But First Brands does not appear to rely on that statutory process, which would have required a written application supported by a detailed affidavit.  *Id.* § 2737.03.   Instead, First Brands appears to refer to common-law replevin.  At common law, an action in replevin would lie for the party "entitled to possession against one having, at the time the suit is begun, actual or constructive possession and control of the property."  *Black v. Cleveland*, 58 Ohio App. 2d 29, 32, 387 N.E.2d 1388 (Ohio Ct. App. 1978) (quoting J. E. Cobbey, Replevin, § 64 (2d ed. 1900)).

For two reasons, First Brands fails to state a claim for replevin.  First, replevin is likely not available under Ohio law outside the statute.  Enactment of a "statutory scheme" typically "supplant[s] the prior common-law system."  *Onderko v. Sierra Lobo, Inc.*, 148 Ohio St. 3d 156, 2016-Ohio-5027, 69 N.E.3d 679, ¶ 25.  The Ohio Supreme Court established that rule over 150 years ago:  "wherever the legislature has by statutory law assumed to establish either rules of property or conduct, it has always been the policy of the law in this state, or at least such is the generally received understanding, that the common law can neither add to nor take from the statutory rules so established."  *Drake v. Rogers*, 13 Ohio St. 21, 29 (Ohio 1861).

Second, the claim also fails procedurally.  KeyBank possesses the escrow funds, making Neenah the improper defendant.  (ECF No. 1-1, ¶ 33, PageID #13; ECF No. 5, ¶ 25, PageID #132.)  The escrow agreement entitles KeyBank during the pendency of any dispute:  "should any dispute arise with respect to the . . . right of possession . . . of the Escrow Funds," the escrow agent may "retain in its possession . . . the Escrow

27

Funds until such dispute shall have been settled."  (ECF No. 1-1, § 7, PageID #22.)
Whatever the ultimate outcome of the parties' dispute, KeyBank may hold the funds
until the dispute ends.  But replevin is a pre-judgment remedy.  *See* Ohio Rev. Code
§ 2737.02.  First Brands has no "right to immediate possession," which is required in
"an action for replevin of personal property."  *Kelley Kar Co. v. Finkler*, 155 Ohio St.
541, 547 (Ohio 1951).

### III.B. Unjust Enrichment

Next, First Brands claims that receiving the earnest money "for an
unconsummated transaction" would unjustly enrich Neenah.  (ECF No. 1-1,
¶¶ 60–61, PageID #16.)  "Unjust enrichment is an equitable doctrine" that "prevent[s]
a party from retaining money or benefits that in justice and equity belong to another."
*Wuliger v. Manufacturers Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting
*Beatley v. Beatley*, 160 Ohio App. 3d 600, 2005-Ohio-1846, 828 N.E.2d 180, ¶ 61 (Ohio
Ct. App. 2005)).  To plead and prove a claim for unjust enrichment, a plaintiff must
show:  "(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the
defendant of the benefit; and (3) retention of the benefit by the defendant under
circumstances where it would be unjust to do so without payment."  *Id.* (quoting
*Hambleton v. R.G. Barry Corp.*, 12 Ohio St. 3d 179, 183, 465 N.E.2d 1298 (Ohio
1984)).

Neenah contends that this claim is "precluded by the existence of a controlling
contractual agreement," namely, the escrow agreement.  (ECF No. 4, PageID #70.)
Because unjust enrichment is "equitable" or "quasi-contractual," "[i]f a contract
covers the transaction at issue, the plaintiff does not need equity; he finds his remedy

28

in the contract." *Gerboc v. ContextLogic, Inc.*, 867 F.3d 675, 678 (6th Cir. 2017) (applying Ohio law).  In response, First Brands argues that a "claim for unjust enrichment may be pled in the alternative" to a breach-of-contract claim.  (ECF No. 12, PageID #217.)  For this basic-pleading stage principle, First Brands relies on *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 699 (S.D. Ohio 2012). In doing so, First Brands omits the balance of relevant language from that case:  "A claim for unjust enrichment may be pled in the alternative, however, *when the existence of an express contract is in dispute*" or "where there is evidence of fraud, bad faith, or illegality."  863 F. Supp. 2d at 699 (emphasis added); *see also Resource Title Agency, Inc. v. Morreale Real Estate Services, Inc.*, 314 F. Supp.2d 763, 772 (N.D. Ohio 2004).  No party denies that the escrow agreement binds the parties and controls disbursement of the escrow funds.  (ECF No. 1-1, ¶ 41, PageID #14; ECF No. 5, ¶ 41, PageID #125.)  Because this dispute concerns the agreement's meaning or application, Ohio law precludes recovery under a theory of unjust enrichment.  *See Ullmann v. May*, 147 Ohio St. 468, 475 (Ohio 1947); *Cleveland Cent. Catholic High Sch. V. Mills*, 2018-Ohio-4873, 125 N.E.3d 328, ¶ 44 (Ohio Ct. App. 2018).

### III.C. Tortious Interference with Contract

In its counterclaim, Neenah alleges that First Brands tortiously interfered with the escrow agreement.  (ECF No. 5, ¶ 73, PageID #140.)  The substance of this tort claim mirrors its counterclaim for breach of contract—"First Brands caused KeyBank not to perform according to the contract's unambiguous terms when it . . . claim[ed] falsely that a dispute had arisen over the escrow funds, when there was no legitimate dispute."  (*Id*.)  Put simply, Neenah claims that First Brands committed a

tort by preventing KeyBank from delivering the escrow funds to Neenah under the terms of the escrow agreement.

For claims of tortious interference with a contract, Ohio subscribes to the Restatement (Second) of Torts, § 766 (1979), which provides:  "One who intentionally and improperly interferes with the performance of a contract . . . between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."  *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419, 650 N.E.2d 863 (1995) (quoting the Restatement).

It is "axiomatic that the wrongdoer must be a non-party to the contract." *Castle Hill Holdings, LLC v. Al Hut, Inc.*, 2006-Ohio-1353, ¶ 47 (Ohio Ct. App. 2006); *see also CajunLand Pizza, LLC v. Marco's Franchising, LLC*, No. 3:20-cv-536, 2021 WL 9166417, at *7 (N.D. Ohio June 8, 2021) (quoting *Dorricott v. Fairhill Ctr. For Aging*, 2 F. Supp. 2d 982, 989–90 (N.D. Ohio 1998)).  This rule makes sense because the contract controls the relationship between the parties without need to resort to tort. Under Ohio law, "it is no tort to breach a contract, regardless of motive." *Hoskins v. Aetna Life Ins. Co.*, 6 Ohio St. 3d 272, 276, 452 N.E.2d 1315 (Ohio 1983).  And "the existence of a contract action excludes the opportunity to present the same case as a tort claim . . . based upon the same actions." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App. 3d 137, 151, 684 N.E.2d 1261 (Ohio Ct. App. 1996) (cleaned

up).  A separate tort claim "will exist independently of the contract action only if the breaching party also breaches . . . a duty owed even if no contract existed."  *Id.*

Neenah fails to plead that First Brands had any non-contractual duty that it might have breached.  (*See* ECF No. 5, ¶¶ 75–76, PageID #140–41.)  Nor does Neenah argue any such duty.  (*See* ECF No. 15, PageID #243–44.)  Because Neenah's claim for tortious interference involves the same conduct and is coextensive with the parties' agreement, it fails to state a claim under Ohio law.

## CONCLUSION

Based on its review of the record and with the benefit of counsel's arguments, the Court has little doubt that First Brands—and likely Neenah—anticipated that First Brands would receive the earnest money it deposited in escrow in the event that the transaction proposed with Neenah failed to materialize.  But the contract at issue does not reflect that understanding or intent.  The plain language of the escrow agreement directs payment of the funds to Neenah.  While these circumstances might invite resort to equity, the law allows little room for courts to intervene, particularly where, as here, sophisticated parties reached an agreement that speaks clearly and directly to the disagreement at hand.

For all these reasons, the Court construes the cross-motions to dismiss the declaratory judgment claims as motions for judgment on the pleadings on that claim, **DENIES** First Brands' motion, and **GRANTS IN PART AND DENIES IN PART** Neenah's motion.  Further, the Court **GRANTS** the balance of First Brands' motion to dismiss and the balance of Neenah's motion to dismiss.  (ECF No. 4; ECF No. 11.)

31

**SO ORDERED.**

Dated:  September 18, 2023

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio